KEELER and others *vs.* CHICESTER.

A *school district collector*, like a *town collector of taxes*, may levy the same upon *any goods and chattels lawfully in the possession of the person liable to pay the tax*, although such person be *not the owner* of such goods and chattels.

The authority to make such levy extends not only to the collection of taxes for erecting or repairing school houses, but to all taxes which may be imposed by the trustees of a school district.

ERROR from the Monroe common pleas. Keeler and two other persons brought in a suit against Chicester in a justice's court, and declared against him in *trespass* for taking and carrying away a cutter or one horse sleigh. On the trial, it appeared that Chicester, as a *deputy sheriff*, by virtue of an execution against one *Henry Lyon*, on the 9th day of March, 1832, levied on the cutter and left it in the possession of Lyon. The execution was returnable on the first Monday of *May*, succeeding the levy. On the *twelfth* day of *May*, the cutter still *remaining in the possession of Lyon*, it was levied up-

on by a *collector* of a *school district*, for a school district tax imposed upon Lyon, by virtue of a warrant issued by the trustees of such district, and subsequently sold by the collec-- tor and bought in by the plaintiffs as trustees of such district, and possession taken thereof. In *December* following, the defendant sold the cutter under the levy made by him in *March*, and delivered possession thereof to the purchaser— one S. Gates. Whereupon the plaintiffs brought their suit. The justice rendered judgment for the plaintiffs. The common pleas of Monroe *reversed* the justice's judgment, and the plaintiffs sued out their writ of error.

*A. Pratt*, for plaintiffs.

*A. W. Stow*, for defendant.

*By the Court*, SAVAGE, Ch. J. If this was an ordinary conflict between two officers, the *defendant* would undoubtedly have the superior right, as the execution was issued and levied before the levy by the *collector*, and there was no such delay as to make the execution dormant. Whether the execution was dormant or not is considered by the defendant's counsel the only question in the case, and may therefore have been the only quest'on agitated in the common pleas; if so, they decided that point correctly. But there is another, and an important question, upon which there does not appear to be any adjudged case; and that is, whether the *collector* of the school tax was not justified in taking *the property of any person lawfully in the possession of the person liable to pay the tax.*

The general act respecting the collection of taxes, declares that, " In case any person shall refuse or neglect to pay the tax imposed on him, the collector shall levy the same by distress and sale of the goods and chattels of the person who ought to pay the same, *or of any goods and chattels in his possession*, wheresoever the same may be found, within the district of the collector; and no claim of property, to be made thereto by any other person, shall be available to prevent a sale." 1 *R. S.* 397, § 2. " No replevin shall lie for any property taken by virtue of any warrant for the collection of any tax, as-

sessment or fine, in pursuance of any statute of this state." 2

R. S. 522, §4. " The collector shall give public notice of
the time and place of sale, and the sale shall be by public
auction." 1 R. S. 398, § 3. If the property shall be sold for
more than the amount of the tax, the surplus shall be return-
ed to the person in whose possession the property was, if no
claim be made by any other person. If the surplus be claim-
ed by another person, on the ground of being owner, and
such claim is admitted by the person for whose tax the prop-
erty was sold, the surplus shall be paid to such owner ; but if
the claim is contested, the surplus shall be paid to the super-
visor of the town, to be paid by him to the person who shall
be adjudge owner by due course of law. 1 R. S. 398, § 4.
2 id. 555, § 28, 29. The principle of these provisions is found
in the *revised laws* and previous statutes, 1 R. L. 95, § 12,
2 id. 512, § 9, with the exception that by them the overplus
was always paid to the person chargeable with the tax. In
both the principle is distinctly recognized, that any property
found in the possession of a person liable to pay the tax, may
be taken and applied to the payment of such tax. In the re-
vised statutes relating to common schools, the authority given
to the collector is not so full. The 88*th* §, 1 R. S. 484, directs
the collector, in case any inhabitant shall not pay such sum
(his tax) on demand, to levy the same of *his goods* and chat-
tels, in the same manner as on executions issued by a justice
of the peace, &c. This section relates to any tax-list or rate-
bill issued by the trustees of the district. The words, " in the
same manner as on executions" are probably intended to reg-
ulate the mere manner, that is, as to the notice necessary, and
the manner of sale at public auction ; but this section, of
itself, would not justify the taking the property of a person
other than the person charged with the tax. The legislature,
in 1831, have amended this section, *Statutes*, 1831, *p.* 248,
§ 2, as follows : " The warrant annexed to any tax-list, for
the collection of district tax for *erecting or repairing any
school house*, shall command the collector, in case any person
named in such list shall not pay the sum set opposite to his
name on demand, to levy the same of his goods and chattels, in
the same manner as on warrants issued by the board of supervi-

NEW YORK,
May, 1835.

Keeler
v.
Chicester.

sors to the collectors of towns ; and such part of the 88th sec-tion of article five of the aforesaid title as is repugnant thereto is hereby repealed." This section speaks of a tax for erect-ing or repairing a school house ; but I apprehend it will op-erate upon all taxes imposed by the trustees. The previous section, for instance, which relates to taxes for the payment of the wages of the teachers, *p.* 481, § 75, *sub.* 8, 14, directs the collector to execute the same, in like manner with other warrants directed to him. Now, the 88th section, before re-ferred to, is the only one which prescribes the manner of the execution of the warrant ; and the act of 1831, I think, should be so construed as to extend to *all taxes imposed by the trustees* There is no reason for any distinction ; and the legislature spoke of one species of taxes probably by way of description of the section they intended to alter, as taxes for building and repairing are much the most important taxes imposed in school districts. An equitable construction will certainly ex-tend the amendment to all taxes collected by collectors of dis-tricts. What the tax was imposed for, in the present instance, does not appear. But whatever was the object of the tax, I think it was to be collected in the same manner, and the *col-lector of the school district* was clothed with the same pow-ers, as the *collectors of towns* in collecting town and county taxes. If I am right in this opinion, then the sale to the plain-tiffs by the collector of school district was valid. The cutter was Lyon's ; he was the general owner. The levy by the de-puty sheriff gave the sheriff a special property ; but had the property been changed entirely, by a sale by the sheriff, that would have made no difference. The fact that the cutter was found in the possession of Lyon, subjected it to the pay-ment of taxes which Lyon was bound to pay. The plaintiffs was therefore entitled to recover. The justice's judgment was right, and the judgment of the common pleas, reversing it, should be reversed.

Judgment reversed.